IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAN PROFT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18 CV 4947 |
| | ) | |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| LISA MADIGAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

The Illinois Election Code limits the contributions that individuals and organizations may make to candidates for state elective offices. The Code removes all such limits, however, in any race in which a candidate's self-funding, or independent expenditures supporting or opposing a candidate, exceed a threshold amount: $250,000 in a race for statewide office, or $100,000 in any other race.

There is, however, one exception to that rule: the Code *never* allows groups registered as "independent expenditure committees" to contribute to candidates, even in a race in which contribution limits have been eliminated for everyone else.

This exception is not justified. Groups registered as independent expenditure committees do not pose a unique threat of corruption that could justify banning them from contributing to candidates in races in which all others, including individuals and ordinary political action committees, may do so without limitation.

The Code therefore unfairly, unreasonably restricts the free-speech and free-association rights of independent expenditure committees and the citizens who form those committees to

engage in political speech. Plaintiffs – a political activist and the independent expenditure committee he chairs – therefore seek a preliminary injunction to allow them to participate to the same extent as individuals and other groups in current and future Illinois legislative races in which the contribution limits that apply to others have been eliminated.

**I.     Background**

    **A.     Illinois' Campaign Contribution Limits**

In 2009, Illinois amended its Election Code to limit the political contributions that individuals and organizations may make and to require political committees to disclose the contributions they receive and the expenditures they make. *See* Ill. Pub. Act 96-832.

The contribution limits enacted in 2009 restrict the amounts that individuals and organizations may contribute to a candidate's political committee in an election cycle: individuals may give no more than $5,000; political action committees ("PACs")[1] may give $50,000; and corporations, unions, and other associations may give $10,000.[2] 10 ILCS 5/9-8.5(b). The Code does not limit the amount that a political party committee may contribute to a candidate in a general election, but it does limit the amounts a party may give in a primary election: $200,000 to a candidate for statewide office; $125,000 to a candidate for Illinois Senate; and $75,000 to a candidate for the Illinois House of Representatives. *Id.*

---

[1] The Code defines a PAC to include any person or organization (other than a candidate, a political party, or a candidate or party's committee) "that accepts contributions or makes expenditures during any 12-month period in an aggregate amount exceeding $5,000 on behalf of or in opposition to a candidate or candidates for public office" or "makes electioneering communications during any 12-month period in an aggregate amount exceeding $5,000 related to any candidate or candidates for public office." 10 ILCS 5/9-1.8(d).

[2] These limits, and all of the Code's monetary amounts referenced in this brief, are subject to adjustment for inflation at the beginning of each election cycle. 10 ILCS 5/9-8.5(g). Plaintiffs use the Code's original amounts for simplicity.

When the General Assembly established those contribution limits, it also made an exception: If a candidate contributes more than a certain amount to his or her own campaign -- $250,000 in a race for governor, or $100,000 in any other race – then all candidates in that race may accept unlimited contributions from any donor (*i.e.*, from any individual, PAC, political party committee, candidate committee, corporation, union, or other association). 10 ILCS 5/9-8.5(h).

In addition to limiting the contributions that candidates can receive from individuals and organizations, the 2009 Code amendments also limit the contributions that other types of political committees may receive. In a given election cycle, an individual may contribute no more than $10,000 to a PAC; a corporation, union, or other association may give no more than $20,000 to a PAC; and PAC may give no more than $50,000 to another PAC. 10 ILCS 5/9-8.5(d). Similarly, in a given election cycle, an individual may contribute no more than $10,000 to a party committee; a corporation, union, or other association may give no more than $20,000; and a PAC may give no more than $50,000. 10 ILCS 5/9-8.5(c).

The "contributions" that the Code restricts include not only cash donations to a political committee but also, among other things, expenditures that a political committee makes "in cooperation, consultation, or concert with another political committee," 10 ILCS 5/9-1.4(A)(5), commonly known as "coordinated expenditures." (Doc. 1, Verified Complaint ("Compl.") ¶ 27.)

### B.    Illinois' Regulation of Independent Expenditures

The Code's restrictions on PACs originally applied to both PACs that make contributions to candidates and PACs that only make independent expenditures – *i.e.*, expenditures made "to advocate for or against a specific candidate without coordination with any public official,

candidate, or political party." *Personal PAC v. McGuffage*, 858 F. Supp. 2d 963, 965 (N.D. Ill. 2012).

In 2012, however, this Court held that the Code's limits on contributions to PACs, and its rule prohibiting anyone from forming more than one PAC, were unconstitutional as applied to PACs that only make independent expenditures. *Id.* at 967-69. The Court based that decision on Supreme Court precedent establishing that the First Amendment prohibits restrictions on independent expenditures because such expenditures, unlike contributions to candidates, do not create a risk of *quid pro quo* corruption. *Id.* (citing *Citizens United v. FEC*, 558 U.S. 310, 340 (2010); *Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 154 (7th Cir. 2011)).

After the *Personal PAC* decision, the Illinois General Assembly amended the Illinois Election Code to address independent expenditures specifically. With that amendment, individuals who make independent expenditures of $3,000 or more in a 12-month period must file written disclosures of the expenditures with the Illinois State Board of Elections. 10 ILCS 5/9-8.6(a). Also, the Code now requires any entity (other than a natural person) that makes independent expenditures to register with the Board as a political committee. 10 ILCS 5/9-8.6(b). And if an entity wishes to receive unlimited contributions to support its independent-expenditure advocacy, it must register with the Board as an "independent expenditure committee," and its chairperson must sign a statement verifying that the committee is "for the exclusive purpose of making independent expenditures" and that "the committee may accept unlimited contributions from any source" only if it does not make contributions to any candidate, party committee, or PAC. 10 ILCS 5/9-3(d-5), 9-8.5(e-5). If an independent expenditure committee makes a contribution to a candidate, party, or PAC, then the Board may impose a fine on it "equal to the amount of any contribution received in the preceding 2 years by the committee that exceeded the

4

limits" that would have applied to the committee if it had registered as an ordinary PAC. 10 ILCS 5/9-8.6(d).

When the General Assembly amended the Code to address independent expenditures, it also added a new exception to the Code's limits on contributions to candidates. Now, the limits in a race are eliminated when either a candidate's self-funding *or* independent expenditures supporting or opposing a candidate exceed (in the aggregate) $250,000 in a race for statewide office or $100,000 in any other race. 10 ILCS 5/9-8.5(h), (h-5).

These limit-lifting provisions can give rise to an anomalous situation. In a race where all limits on contributions to candidates have been eliminated, every person and every type of organization may give candidates unlimited amounts of money and may coordinate with candidates without limitation – except independent expenditure committees, which remain prohibited from coordinating with candidates or otherwise contributing to them.

### C. Injury to Plaintiffs Dan Proft and Illinois Liberty PAC

Plaintiff Dan Proft is a political activist who associates with others to communicate with the public about political ideas and candidates for state elective offices in Illinois. (Compl. ¶ 41.) He would like to raise unlimited funds from like-minded individuals and organizations and, in turn, spend unlimited amounts on communications – such as television and radio advertisements and literature – supporting and opposing candidates for state elective offices. (*Id.* ¶ 42.) He also would like to be able to make unlimited contributions to the candidates he supports, and to communicate and coordinate freely with those candidates, because he believes that doing so would make his communications, and the candidates' communications, to the public more effective. (*Id.* ¶ 43.)

5

The Code, however, does not allow Mr. Proft to do all these things. To associate with others to raise money to speak about candidates for office, Mr. Proft must choose between two imperfect alternatives. Under Illinois law, he may either: (1) form a PAC and be subject to limits on the funds he can raise and, except in races where the limits have been lifted, on the contributions and coordinated expenditures he can make; or (2) form an independent expenditure committee and be totally, permanently prohibited from contributing to and coordinating with candidates.

Faced with this choice, Mr. Proft chose in 2012 to form Liberty Principles PAC as an independent expenditure committee. (Compl. ¶ 46.) Since then, Liberty Principles PAC has raised funds from donors and made independent expenditures supporting and opposing candidates in many Illinois legislative races, all while complying with the Code's restrictions, disclosure requirements, and other rules for independent expenditure committees. (*Id.* ¶ 47.)

In races in which the limits on contributions to candidates have been eliminated for individuals and organizations other than independent expenditure committees under 10 ILCS 5/9-8.5(h) or (h-5), Mr. Proft would like to be able to contribute to, and communicate and coordinate with, the candidates he supports through Liberty Principles PAC – just as the Code allows any individual, PAC, or other association to do. (Compl. ¶ 48.) He cannot do so, however, because, again, the Code prohibits independent expenditure committees from ever making contributions to candidates – even when the contribution limits have been eliminated for individuals and every other type of entity. (*Id.* ¶ 49.)

For example, in the 2018 primary election, Liberty Principles PAC made independent expenditures in numerous races in which the limits on contributions to candidates were eliminated under 10 ILCS 5/9-8.5(h-5), including the races for State Representative for the 46th,

49th, 53rd, 56th, 62nd, 82nd, 93rd, 101st, 108th, 109th, 110th, and 115th Districts. (Compl. ¶ 50.) In each of those races, after the contribution limits were eliminated for others, Liberty Principles PAC could have and would have coordinated with, or otherwise made contributions to, a candidate in the race if the Illinois Election Code had not forbidden it. (*Id.* ¶ 51.)

Currently, Liberty Principles PAC is planning to make independent expenditures supporting and opposing candidates in numerous state legislative races in the 2018 general election, including the races for State Representative for the 19th, 46th, 55th, 56th, 62nd, 111th, and 112th Districts. (*Id.* ¶ 52.) Mr. Proft anticipates that, in some or all of those races, the limits on contributions to candidates will be eliminated under 10 ILCS 5/9-8.5(h-5) due to independent expenditures exceeding the (inflation-adjusted) $100,000 threshold. (*Id.* ¶ 53.) Indeed, Mr. Proft is certain that the limits on contributions to candidates will be eliminated under 10 ILCS 5/9-8.5(h-5) in at least one of those races due to Liberty Principles PAC's own independent expenditures exceeding the threshold. (*Id.* ¶ 54.)

When the limits on contributions to candidates are inevitably eliminated in some or all of the 2018 general election races in which Liberty Principles PAC participates, Mr. Proft and Liberty Principles PAC would like to begin coordinating with or otherwise contributing to candidates, just as individuals and other types of organizations will be allowed to do. (*Id.* ¶ 55.) But the Election Code will not allow them to do so, and they will not do so unless this Court grants them injunctive relief. (*Id.* ¶ 56.)

Mr. Proft and Liberty Principles PAC have therefore filed this lawsuit challenging Illinois ban on contributions by independent expenditure committees in races where limits have otherwise been eliminated under 10 ILCS 5/9-8.5(h) or (h-5) for violating their First Amendment rights to free speech and free association and the Fourteenth Amendment right to equal

7

protection. With this motion, Mr. Proft and Liberty Principles PAC seek a preliminary injunction to allow them to participate as fully as other types of organizations in the 2018 general election.

## II. Standard of Review

To prevail on a motion for preliminary injunction, Plaintiffs must demonstrate: (1) a likelihood of success on the merits; (2) the lack of an adequate remedy at law; and (3) irreparable harm if the Court does not grant the injunction. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If these conditions are met, then the Court must then balance the hardship the moving party will suffer in the absence of relief against any hardship the nonmoving parties will suffer if the injunction is granted. *Id.* Finally, the Court considers the interests of nonparties in deciding whether to grant injunctive relief. *Id.* The Court weighs all these factors using a "'sliding scale' approach: the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh toward his side; the less likely it is the plaintiff will succeed, the more the balance need weigh toward his side." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

## III. Argument

This Court should issue a preliminary injunction to prohibit Defendants from penalizing Plaintiffs and other independent expenditure committees for contributing to candidates in races where contribution limits have been eliminated for individuals and other entities. Plaintiffs are likely to succeed on the merits of their constitutional claims, and they will suffer irreparable harm without an injunction because they will be unable to fully exercise their First Amendment rights in supporting and opposing candidates in the upcoming 2018 general election.

    **A.**    **Plaintiffs are likely to succeed on the merits of their claims because Defendants cannot justify prohibiting independent expenditure**

**committees from contributing to candidates in races in which everyone else may make unlimited contributions.**

Plaintiffs are likely to succeed on the merits of their First Amendment claim, and therefore satisfy the first preliminary-injunction factor, because Defendants cannot show that banning contributions to candidates by independent expenditure committees at times when all others may make unlimited contributions is a narrowly tailored or closely drawn means of preventing corruption.

### 1. The ban on contributions by independent expenditure committees is subject to strict scrutiny.

This Court should subject the ban that Plaintiffs challenge to strict scrutiny because it discriminates against certain political speakers (independent expenditure committees) and in favor of others (individuals and every other type of organization). The First Amendment "stands against restrictions distinguishing among different speakers, allowing speech by some but not others," because such restrictions are "all too often simply a means to control content." *Citizens United v. FEC*, 558 U.S. 310, 340 (2010). Therefore, when a plaintiff challenges a campaign contribution limit that favors or disfavors certain political speakers, courts should subject that limit to strict scrutiny. *See Austin v. Mich. Chamber of Comm.*, 494 U.S. 652, 666 (1990) (statute imposing different independent-expenditure limits on different types of associations subject to strict scrutiny), *overruled on other grounds* by *Citizens United*, 558 U.S. 310; *Russell v. Burris*, 146 F.3d 563, 571-72 (8th Cir. 1988) (applying strict scrutiny in equal protection challenge to statute allowing "small-donor" PACs to give candidates as much as $2,500 while limiting other PACs' contributions to $300 or $100); *Protect My Check, Inc. v. Dilger*, 176 F. Supp. 3d 685, 691-92 (E.D. Ky. 2016) (concluding that "strict scrutiny applies to contribution bans with equal

9

protection implications," holding Kentucky statute unconstitutional to the extent that it banned contributions by corporations and their PACs but not union and LLC PACs).

Under strict scrutiny, the government must show that the challenged restriction is narrowly tailored to serve a compelling governmental interest and that it "curtail[s] speech only to the degree necessary to meet the problem at hand," avoiding unnecessary infringement of "speech that does not pose the danger that has prompted the regulation." *FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 265 (1986).

> **2. In the alternative, the ban on contributions by independent expenditure committees is subject to rigorous First Amendment scrutiny.**

In the alternative, if the Court does not apply strict scrutiny, then it must at least apply the rigorous scrutiny that generally applies to limits on campaign contributions. Under that standard, limits on campaign contributions violate the First Amendment unless the government shows that they are closely drawn to serve a sufficiently important interest. *Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 152 (7th Cir. 2011) (citing, among other cases, *Buckley v. Valeo*, 424 U.S. 1, 20-21, 23-25 (1976)). Under that test, as under strict scrutiny, the Court "must assess the fit between the stated governmental objective and the means selected to achieve that objective." *McCutcheon v. FEC*, 134 S. Ct. 1434, 1445 (2014). Although the fit need not be "perfect," it must be "reasonable" and must use a "means narrowly tailored to fit the desired objective." *Id.* at 1456-57. To meet its burden, the government must show that "adequate evidentiary grounds" support its putative justification for the challenged limits. *FEC v. Colo. Republican Fed. Campaign Cmte.*, 533 U.S. 431, 456 (2001); *see also Randall v. Sorrell*, 548 U.S. 230, 261 (2006) (striking limits where government presented no evidence to justify them); *Nixon v. Shrink*

*Mo. Gov't PAC*, 528 U.S. 377, 392 (2000) (government must provide evidence, not just "mere conjecture," to justify contribution limits).

The only government interests the Supreme Court has recognized as sufficiently important to justify restrictions on campaign contributions are the prevention of *quid pro quo* corruption, the prevention of the appearance of such corruption, and the prevention of circumvention of contribution limits that prevent actual or apparent corruption. *Wis. Right to Life*, 664 F.3d at 153. (For simplicity, Plaintiffs will refer to these interests collectively as "prevention of corruption.")

### 3. Illinois' ban on contributions by independent expenditure committees in races where contribution limits have otherwise been eliminated cannot survive any level of First Amendment scrutiny because it is not narrowly tailored to prevent corruption.

Under either level of First Amendment scrutiny, Plaintiffs are likely to succeed on the merits of their claims because Illinois' ban on contributions by independent expenditure committees in races in which contribution limits have otherwise been eliminated is not narrowly tailored to serve the government's interest in preventing corruption.

Again, when limits are lifted in a given race under 10 ILCS 5/9-8.5(h) or (h-5), people and groups of every kind may coordinate with candidates for office and otherwise contribute to candidates without limitation – except independent expenditure committees, for whom those activities remain forbidden. Defendants cannot justify prohibiting independent expenditure committees from contributing to and coordinating with candidates under that circumstance.

In a race in which limits have otherwise been eliminated, Defendants could have no basis for believing that an independent expenditure committee's contributions or coordination would pose a greater threat of corruption than contributions or coordination by anyone else – let alone a threat *so much* greater that it could justify *banning* independent expenditure committees'

11

contributions while allowing everyone else to make *unlimited* contributions. If the state does not deem it necessary to limit the contributions that two individuals separately give to a candidate, it can have no justification for limiting the same individuals' ability to contribute to a candidate when they come together to make contributions through an independent expenditure committee. To place no limits on individuals when they act separately, but limit them when they act together, arbitrarily interferes with their First Amendment rights to freedom of association and free speech.

Ordinarily, limits on an entity's coordinated expenditures can be justified by the government's interest in preventing donors from using political committees to circumvent contribution limits. *See FEC v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431, 443 (2001); *O'Keefe v. Chisholm*, 769 F.3d 936, 941 (7th Cir. 2014). That anti-circumvention rationale does not exist, however, in a race where the limits have otherwise been eliminated under 10 ILCS 5/9-8.5(h) or (h-5) – *i.e.*, where there are no longer any limits to circumvent.

The state cannot justify restricting independent expenditure committees under this circumstance by arguing that the people who form independent expenditure committees have elected to accept certain restrictions on their activity in exchange for the right to receive unlimited contributions and make unlimited independent expenditures. When *everyone's* contributions to candidates to candidates are limited, the Code's special restrictions on independent expenditure committees make sense because they ensure that individuals who form an independent expenditure committee can exercise their right to engage in unlimited independent political speech but cannot use an independent expenditure committee to circumvent the limits that apply to individuals, ordinary PACs, and other donors. *See O'Keefe*, 769 F.3d at 941. Where contribution limits for other donors have been eliminated, however, the anti-

circumvention justification no longer applies – again, there are no limits to circumvent – and the state no longer has any anti-corruption rationale for restricting independent expenditure committees' coordination and contributions.

With no anti-corruption rationale to justify it, the ban on contributions by independent expenditure committees in races in which limits on all other have been eliminated under 10 ILCS 5/9-8.5(h) or (h-5) cannot stand. *See Wis. Right to Life*, 664 F.3d at 153. Plaintiffs are therefore highly likely to succeed on the merits of their constitutional claims.

### B. The other preliminary injunction factors favor an injunction.

When a plaintiff seeks to enjoin a restriction on First Amendment rights, courts presume the remaining preliminary injunction factors to be satisfied because "[t]he loss of First Amendment freedoms is presumed to constitute an irreparable injury for which damages are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (citing *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004)).

Plaintiffs lack an adequate remedy at law and are being irreparably harmed by the restriction they challenge because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "[A]ny post-election remedy would not compensate . . . for [Plaintiffs'] loss of the freedom of speech." *Personal PAC*, 858 F. Supp. 2d at 969 (quoting *Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998)).

The balancing of harms also favors an injunction. Defendants cannot suffer harm when they are prevented from enforcing an unconstitutional statute. *Joelner*, 378 F.3d at 620. Plaintiffs, in contrast, will suffer great harm without an injunction because they will be unable to

speak and participate as fully in the 2018 general election as they would like. *Cf. Personal PAC*, 858 F. Supp. 2d at 969 (balance of harms "particularly" favored an injunction where PAC would otherwise "be limited in how it c[ould] contribute to the free discussion of candidates and government affairs" before an upcoming election); *see also CRG Network v. Barland*, 48 F. Supp. 3d 1191, 1196 (E.D. Wis. 2014) (preliminary injunction against campaign contribution restriction "all the more appropriate" when "clock is ticking toward election day").

Further, the public interest favors granting an injunction because, again, "it is always in the public interest to protect First Amendment liberties." *Joelner*, 378 F.3d at 620; *CRG Network*, 48 F. Supp. 3d at 1196 (preliminary injunction against campaign contribution restriction would "serve the public interest by vindicating First Amendment freedoms"). Here, an injunction would be especially beneficial to the public interest because the restriction that Plaintiffs challenge discriminates between different speakers in the political arena. By restricting independent expenditure committees alone, the statute favors the speech of other participants in Illinois politics – such as political party committees, which may benefit from restrictions on independent expenditure committees such as Liberty Principles PAC that often oppose party-backed candidates.

### IV. Conclusion

Illinois can have no justification for eliminating contribution limits for everyone in Illinois politics except for independent expenditure committees such as Plaintiff Liberty Principles PAC. The Court should therefore issue a preliminary injunction enjoining Defendants from enforcing Illinois' ban on coordinated expenditures and contributions to candidates by independent expenditure committees against Liberty Principles PAC and any other independent-

expenditure committee in any race where contribution limits have otherwise been eliminated under 10 ILCS 5/9-8.5(h) or (h-5).

Dated: July 18, 2018

    Respectfully Submitted,

    /s/ Patrick Hughes
    Patrick J. Hughes (#6225212)
    Jeffrey M. Schwab (#6290710)
    James J. McQuaid (#6321108)
    LIBERTY JUSTICE CENTER
    190 South LaSalle Street, Suite 1500
    Chicago, Illinois 60603
    Telephone (312) 263-7668
    Facsimile (312) 263-7702
    phughes@libertyjusticecenter.org
    jschwab@libertyjusticecenter.org
    jmcquaid@libertyjusticecenter.org

    *Attorneys for Plaintiff\*

**CERTIFICATE OF SERVICE**

I, James J. McQuaid, an attorney, certify that on August 9, 2018, I served Plaintiffs' Memorandum in Support of Their Motion for Preliminary Injunction on Defendants' counsel by filing it through the Court's electronic case filing system.

/s/ James J. McQuaid