**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAN PROFT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18 CV 4947 |
| | ) | |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| LISA MADIGAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' COMBINED RESPONSE TO**
**DEFENDANTS' MOTION TO DISMISS AND REPLY**
**IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

FACTS ........................................................................................................... 2

LEGAL STANDARD .................................................................................... 3

ARGUMENT ................................................................................................. 4

I.   Plaintiffs are likely to succeed on the merits of, and have adequately stated a
     claim under the First Amendment because prohibiting independent
     expenditure committees from contributing to candidates in races in which
     everyone else may make unlimited contributions is not a closely drawn means
     of preventing *quid pro quo* corruption............................................................ 4

     A.   Under both strict scrutiny and rigorous First Amendment scrutiny,
          Plaintiffs have a likelihood of success on their First Amendment claim............. 4

     B.   Defendants cannot justify an infringement of Plaintiffs' free speech as
          a closely drawn manner of preventing *quid pro quo* corruption. ....................... 6

          1.   The Code infringes on Plaintiffs' First Amendment rights. ........................ 6

          2.   The Code's restriction on independent expenditure committees'
               ability to contribute to a candidate when others may make
               unlimited contributions is not closely drawn to serve an interest in
               preventing *quid pro quo* corruption. ............................................. 8

II.  Plaintiffs are likely to succeed on the merits of, and have adequately stated an
     Equal Protection claim because Defendants cannot justify the Code's unequal
     treatment of independent expenditure committees, which prohibits them from
     contributing to candidates in races in which similarly situated parties may
     make unlimited contributions. ..................................................................... 10

     A.   The Code's discriminatory treatment of independent expenditure
          committees is subject to strict scrutiny because it implicates the
          fundamental right to free speech. ....................................................... 10

     B.   The Code's discriminatory treatment of independent expenditure
          committees is not justified by the State's interest in preventing *quid
          pro quo* corruption. ...................................................................... 11

III. The other preliminary injunction factors favor an in junction. ....................... 12

i

CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*Austin v. Mich. Chamber of Comm.*, 494 U.S. 652 (1990) .............................................................. 4

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........................................................................................... 5, 6

*Christian Legal Soc'y v. Walker*, 453 F.3d 853 (7th Cir. 2006) .................................................. 13

*Citizens United v. FEC, 558 U.S. 310 (2010)* ............................................................................. 4

*City of Ladue, v. Gilleo*, 512 U.S. 43 (1994) ............................................................................... 7

*Elrod v. Burns*, 427 U.S. 347 (1976) .......................................................................................... 13

*FEC v. Colo. Republican Fed. Campaign Cmte.*, 533 U.S. 431 (2001) ........................................ 8

*Fenje v. Feld,* Case No. 01 C 9684, 2002 U.S. Dist. LEXIS 9492 (N.D. Ill. May 28, 2002) ...... 13

*Florida Star v. B.J.F.*, 491 U.S. 524 (1989) ................................................................................ 8

*Illinois Liberty PAC v. Madigan,* 212 F. Supp. 3d 753 (N.D. Ill. 2016) ..................................... 3

*Illinois Liberty PAC v. Madigan,* No. 16-3585, 2018 U.S. App. LEXIS 25927
    (7th Cir. Sep. 13, 2018) ........................................................................................................... 3

*Joelner v. Vill. of Wash. Park*, 378 F.3d 613 (7th Cir. 2004) ..................................................... 13

*Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013) .......................................................................... 4

*McCutcheon v. FEC*, 134 S. Ct. 1434 (2014) .............................................................................. 5

*Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377 (2000) ................................................................ 8

*Personal PAC v. McGuffage*, 858 F. Supp. 2d 963 (N.D. Ill. 2012) ........................................... 10

*Plyler v. Doe*, 457 U.S. 202 (1982) ........................................................................................ 10, 11

*Protect My Check, Inc. v. Dilger*, 176 F. Supp. 3d 685 (E.D. Ky. 2016) .................................. 4-5

*Randall v. Sorrell*, 548 U.S. 230 (2006) ..................................................................................... 8

*Reed v. Reed*, 404 U.S. 71 (1971) ............................................................................................... 10

*Regan v. Taxation With Representation of Wash.*, 461 U.S. 540 (1983)................................. 10-11

*Russell v. Burris*, 146 F.3d 563 (8th Cir. 1988) .............................................................. 4

*Savory v. Lyons*, 469 F.3d 667 (7th Cir. 2006) ............................................................... 3

*Veazey v. Communications & Cable, Inc.*, 194 F.3d 850 (7th Cir. 1999) ...................... 4

*Wis. Right to Life State PAC v. Barland*, 664 F.3d 139 (7th Cir. 2011) .......................... 5, 6, 7, 11

**Statutes**

10 ILCS 5/9-2 ................................................................................................................... 2

10 ILCS 5/9-8.5 .......................................................................................................... passim

10 ILCS 5/9-8.6 ............................................................................................................... 10

**Introduction**

The Illinois Election Code prohibits groups registered as "independent expenditure committees" from contributing to candidates for state elective offices, even in races in which the contribution limits to candidates have been removed under the Code because a candidate's self-funding, or independent expenditures supporting or opposing a candidate, exceed a certain threshold amount.

The Code's restriction on independent expenditure committees' ability to make contributions to candidates in such races unreasonably restricts the free-speech and free-association rights of independent expenditure committees and the citizens who form them. Groups registered as independent expenditure committees do not pose a unique threat of corruption that could justify banning them from contributing to candidates in races in which all others, including individuals and ordinary political action committees, may do so without limitation.

Plaintiffs filed a complaint and a motion for preliminary injunction asking this Court to bar enforcement of the contribution ban for independent expenditure committees when all others may make unlimited contributions because such a ban violates Plaintiffs' free speech and equal protection rights under the First and Fourteenth Amendments. Defendants filed a combined motion to dismiss the complaint and response to Plaintiffs' motion for preliminary injunction. Plaintiffs' motion for preliminary injunction should be granted and Defendants' motion to dismiss should be denied because Defendants fail to show that the restriction on independent expenditure committees' ability to make contributions to candidates in races where the contribution limits have been lifted for individuals and other organization is narrowly tailored or closely drawn to serve an interest in preventing *quid pro quo* corruption.

**Facts**

Plaintiffs refer to the facts set forth in their complaint and motion for preliminary injunction, but wish to highlight two aspects of the Illinois Election Code.

First, an individual who creates an independent expenditure committee may not also create a regular political action committee. *See* 10 ILCS 5/9-2(d). Defendants incorrectly assert that Plaintiff Dan Proft could create a "PAC that can contribute directly to candidates and coordinate with them while at the same time keeping Liberty Principles PAC in its present form [as an independent expenditure committee.]" (Memo. 5.)

Section 5/9-2(d) says that no person forming a political action committee shall maintain or establish more than one political action committee. 10 ILCS 5/9-2(d). It also says that "[t]his subsection does not apply to independent expenditure committees." *Id*. The plain meaning of that provision is that a person may establish more than one independent expenditure committee, not that a person may establish both a PAC and an independent expenditure committee. The reasons for this are obvious. Since independent expenditure committees may spend unlimited funds on a race (but may not make contributions to or coordinate with a candidate), the forming of a second independent expenditure committee would not allow a person to circumvent any the limitations on election spending. In contrast, establishing a second PAC would allow a person to circumvent the Code's limits on the amount of campaign contributions PACs could normally make. And allowing a person to establish both a PAC – which can make contributions directly to a candidate *and coordinate with the candidate* – and an independent expenditure committee – which can spend unlimited amount of money in a race in support of that candidate – would mean that a person could spend unlimited sums in a particular race while coordinating with the candidate. Permitting a person to establish a PAC and an independent expenditure committee would create

a loophole that would completely undermine the justification for the Code's limits on campaign contributions to candidate by individuals, corporations, unions, PACs, and other organizations, and would similarly undermine the justification for the Code's prohibition on direct contributions to, and coordination with, candidates by independent expenditure committees in any race.[1] Because Plaintiff Dan Proft has established an independent expenditure committee, the Code prohibits him from also establishing a PAC that would make direct contributions to candidates for political office.

A second relevant aspect of the Code is that individuals, not just independent expenditure committees, who make independent expenditures over a threshold can trigger the Code's elimination of the limits on campaign contributions in a particular race. 10 ILCS 5/9-8.5 (h-5) (limits on contributions are eliminated if an *individual* or independent expenditure committee makes independent expenditures in support of or in opposition to a candidate in an aggregate amount of more than $250,000 for statewide office or $100,000 for all other elective offices in an election cycle).

### Legal Standard

In considering a motion to dismiss under Rule 12(b)(6) a court must construe all well-pleaded allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). A motion to dismiss will not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

---

[1] It is also relevant to note that in litigation challenging other provisions of the Election Code in which Defendants were parties – and Plaintiffs' counsel in this matter represented the plaintiffs – Defendants' witness, Steve Sandvoss, the Executive Direct of the Illinois Board of Elections, testified that a person could *not* establish both a PAC and an independent expenditure committee. Transcript of Proceedings, January 26, 2016, at 232.22 to 233.23, *Illinois Liberty PAC v. Madigan*, 212 F. Supp. 3d 753 (N.D. Ill. 2016) (No. 12 C 5811) (affirmed by *Illinois Liberty PAC v. Madigan*, No. 16-3585, 2018 U.S. App. LEXIS 25927 (7th Cir. Sep. 13, 2018), attached Exhibit A.

his claims which would entitle him to relief. *Veazey v. Communications & Cable, Inc.*, 194 F.3d 850, 854 (7th Cir. 1999).

On a motion for preliminary injunction in a First Amendment case, "the analysis begins and ends with the likelihood of success on the merits." *Korte v. Sebelius*, 735 F.3d 654, 666 (7th Cir. 2013).

## Argument

**I.    Plaintiffs are likely to succeed on the merits of, and have adequately stated a claim under the First Amendment because prohibiting independent expenditure committees from contributing to candidates in races in which everyone else may make unlimited contributions is not a closely drawn means of preventing *quid pro quo* corruption.**

Plaintiffs are likely to succeed on the merits of, and thus, have adequately stated a claim under the First Amendment because Defendants cannot show that banning contributions to candidates by independent expenditure committees at times when all others may make unlimited contributions is a narrowly tailored or closely drawn means of preventing corruption.

### A.    Under both strict scrutiny and rigorous First Amendment scrutiny, Plaintiffs have a likelihood of success on their First Amendment claim.

In their complaint and motion for preliminary injunction, Plaintiffs asked this Court to subject the ban that Plaintiffs challenge to strict scrutiny because it discriminates against certain political speakers (independent expenditure committees) and in favor of others (individuals and every other type of organization). *See Austin v. Mich. Chamber of Comm.*, 494 U.S. 652, 666 (1990) (statute imposing different independent-expenditure limits on different types of associations subject to strict scrutiny), *overruled on other grounds* by *Citizens United v. FEC*, 558 U.S. 310 (2010); *Russell v. Burris*, 146 F.3d 563, 571-72 (8th Cir. 1988) (applying strict scrutiny in equal protection challenge to statute allowing "small-donor" PACs to give candidates as much as $2,500 while limiting other PACs' contributions to $300 or $100); *Protect My Check,*

*Inc. v. Dilger*, 176 F. Supp. 3d 685, 691-92 (E.D. Ky. 2016) (concluding that "strict scrutiny applies to contribution bans with equal protection implications," holding Kentucky statute unconstitutional to the extent that it banned contributions by corporations and their PACs but not union and LLC PACs).

But even if the Court does not apply strict scrutiny to the unfair limits placed on independent expenditure committees compared to all other types of donor organizations, the Court must still apply rigorous scrutiny because limits on campaign contributions affect a fundamental right. Under that standard, limits on campaign contributions violate the First Amendment unless the government shows that they are closely drawn to serve a sufficiently important interest. *Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 152 (7th Cir. 2011) (citing, among other cases, *Buckley v. Valeo*, 424 U.S. 1, 20-21, 23-25 (1976)). Under that test, as under strict scrutiny, the Court "must assess the fit between the stated governmental objective and the means selected to achieve that objective." *McCutcheon v. FEC*, 134 S. Ct. 1434, 1445 (2014).

The only government interests the Supreme Court has recognized as sufficiently important to justify restrictions on campaign contributions are the prevention of *quid pro quo* corruption, the prevention of the appearance of such corruption, and the prevention of circumvention of contribution limits that prevent actual or apparent corruption. *Wis. Right to Life*, 664 F.3d at 153.

Under either level of scrutiny, the Court should find that Plaintiffs have a likelihood of success on the merits of their First Amendment claim because Defendants cannot justify banning contributions to candidates by independent expenditure committees at times when all others may make unlimited contributions as a narrowly tailored or closely drawn means of preventing corruption.

**B.** **Defendants cannot justify an infringement of Plaintiffs' free speech as a closely drawn manner of preventing *quid pro quo* corruption.**

**1.** **The Code infringes on Plaintiffs' First Amendment rights.**

Defendants' primary argument against Plaintiffs' First Amendment claim is that Plaintiffs free speech rights aren't infringed at all. (Memo. 13.) Defendants assert that Plaintiffs' "only claim is that because the State has chosen to lift the caps for those otherwise subject to contribution limits, the State must lift them for those independent expenditure committees that never had the right to make unregulated contributions in the first place." (Memo. 13-14.) Defendants simply ignore Plaintiffs' allegation that their free speech rights are violated by the restriction on its ability to contribute to *and coordinate with* a candidate. Coordination with a candidate unquestionably involves communication with a candidate, and Defendants cannot deny that communication involves free speech rights. Further, Defendants' assertion simply ignores well-established Supreme Court precedent finding that restrictions on the ability to make political contributions affect the contributor's free speech and free association rights under the First Amendment. *Buckley*, 424 U.S. at 23-25. There is no question that political contributions involve the fundamental rights of free speech and associational rights. *Id.*

Defendants' faulty assertion suggests confusion about why the State is normally permitted to place limits on campaign contributions to candidates and prohibit independent expenditure committees from making contributions to, or coordinating with candidates. Defendants erroneously believe that because these restrictions are normally constitutional, they don't implicate free speech rights. But limits on campaign contributions violate the free speech rights of the contributors unless the government can show that they are closely drawn to serve a sufficiently important interest. *Wis. Right to Life State PAC*, 664 F.3d at 152. And the only

compelling interest for limiting contributions is the prevention of *quid pro quo* corruption. *Id.*at 153.

The Code's limits on the amount of money that an individual, corporation, union, or PAC may contribute directly to a candidate, and its prohibition on independent expenditure committees from contributing to or coordinating with a candidate, are *generally* justified by the State's interest in preventing *quid pro quo* corruption *even though* they implicate free speech rights. But Plaintiffs are not challenging universally-applied contribution limits. When contribution limits are eliminated for other donors, the State's prohibition of independent expenditure committees from making contributions to candidates can hardly be closely drawn to its interest in the prevention of *quid pro quo* corruption when the State permits everyone else to make unlimited contributions to candidates.

Defendants assert that "[l]ifting a restraint on Person A does not restrict the First Amendment rights of Person B when the two persons are not starting from the same regulatory baseline." (Memo. 14.) But it's not the lifting of the contribution limits for individuals, corporations, and PACs that infringes on Plaintiffs' free speech rights. Rather the lifting of the contribution limit on individuals, corporations, and PACs eliminates the justification for the infringement of Plaintiffs' rights – the prohibition on independent expenditure committees' contributions to and cooperation with a candidate. An exemption from restrictions on speech – even from restrictions that are "otherwise permissible" – can "diminish the credibility of the government's rationale for restricting speech in the first place" and demonstrate that the restrictions are not narrowly tailored to serve a sufficiently important governmental interest. *City of Ladue, v. Gilleo*, 512 U.S. 43, 52 (1994). "[A] law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction upon . . . speech, when it leaves appreciable damage to that supposedly

vital interest unprohibited." *Florida Star v. B.J.F.*, 491 U.S. 524, 541-42 (1989) (Scalia, J., concurring). Thus, the Code's restriction on independent expenditure committees' ability to contribute to a candidate cannot be regarded as closely drawn to preventing *quid pro quo* corruption when everyone else – individuals, corporations, unions, and other PACs – are permitted to give unlimited amounts to candidates.

  **2.**  **The Code's restriction on independent expenditure committees' ability to contribute to a candidate when others may make unlimited contributions is not closely drawn to serve an interest in preventing *quid pro quo* corruption.**

  To meet its burden, the government must show that "adequate evidentiary grounds" support its putative justification for the challenged limits. *FEC v. Colo. Republican Fed. Campaign Cmte.*, 533 U.S. 431, 456 (2001); *see also Randall v. Sorrell*, 548 U.S. 230, 261 (2006) (striking limits where government presented no evidence to justify them); *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 392 (2000) (government must provide evidence, not just "mere conjecture," to justify contribution limits). Defendants' attempt to justify the Code's restriction on Plaintiffs' free speech is nothing more than mere conjecture.

  Defendants attempt to justify the Code's disparate treatment of independent expenditure committees after the contribution limits are lifted by invoking an interest in preventing the circumvention of campaign finance requirements. (Memo. 14.) It is true that courts have generally recognized that an interest in preventing the "circumvention of valid contribution limits" can justify limits on campaign contributions. *Colo. Republican Fed. Campaign Comm.*, 533 U.S. at 456. But Defendants assert that the interest in preventing the circumvention of contribution limits applies "[e]ven when spending limits have been lifted in the case of 'self-funding.'" (Memo. 14.) This claim makes no sense. When the law removes contribution limits,

there are no contribution limits to circumvent and the State no longer has any anti-corruption rationale for restricting independent expenditure committees' coordination and contributions.

Defendants assert that "the legislature could well have concluded that it was worthwhile to prevent independent expenditure committees from directly contributing and coordinating with political campaigns, to avoid the potential for quid pro quo corruption." (Memo. 14.) But Defendants do not explain, let alone provide any evidence, that an independent expenditure committee's contributions or coordination would pose a greater threat of *quid pro quo* corruption than contributions or coordination by anyone else – let alone a threat so much greater that it could justify banning independent expenditure committees' contributions while allowing everyone else to make unlimited contributions.

Defendants assert that because independent expenditure committees can make independent expenditures in an amount that would result in the contribution limits being removed under the Code, independent expenditure committees have "a power that a political action committee does not have." (Memo. 7.) But individuals, too, can make independent expenditures in an amount that removes the contribution limits. 10 ILCS 5/9-8.5(h-10). And once the contribution limits are removed, individuals, unlike independent expenditure committees, are free to make unlimited contributions to and coordinate with candidates. The ability to remove the contribution limits is not a unique ability of independent expenditure committees that justifies restricting only their ability to make unlimited contributions to candidates when everyone else can do so.

Further, contrary to Defendants' assertions, (Memo. 5, 15), there's nothing relevant about the fact that independent expenditure committees can blow the contribution caps by making independent expenditures over a threshold amount that raises the threat of *quid pro quo* corruption. Independent expenditure committees cannot coordinate with candidates to make

9

independent expenditures over the threshold amount to trigger the removal of the contribution limits. *See* 10 ILCS 5/9-8.6. And independent expenditures cannot create a risk of *quid pro quo* corruption. *Personal PAC v. McGuffage*, 858 F. Supp. 2d 963, 967-69 (N.D. Ill. 2012).

Plaintiffs have adequately alleged a First Amendment claim and have a likelihood of success on the merits of their First Amendment claim. Defendants cannot explain how its restriction on the ability of independent expenditure committees to make contributions is closely drawn to an interest in preventing *quid pro quo* corruption when everyone else can make unlimited contributions.

**II.      Plaintiffs are likely to succeed on the merits of, and have adequately stated an Equal Protection claim because Defendants cannot justify the Code's unequal treatment of independent expenditure committees, which prohibits them from contributing to candidates in races in which similarly situated parties may make unlimited contributions.**

The Code's prohibition on coordinated expenditures by independent expenditure committees in races where the Code's limits on contributions to candidates have been eliminated violates the Equal Protection Clause of the Fourteenth Amendment.

**A.      The Code's discriminatory treatment of independent expenditure committees is subject to strict scrutiny because it implicates the fundamental right to free speech.**

The Fourteenth Amendment denies states the power to "legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute." *Reed v. Reed*, 404 U.S. 71, 75-76 (1971). Where a classification implicates a fundamental right, including the right to free speech, it is subject to strict scrutiny, and the state must show that it is narrowly tailored to serve a compelling governmental interest.  *Plyler v. Doe*, 457 U.S. 202, 217-18 (1982) (classifications that impinge on exercise of a fundamental right subject to strict scrutiny); *Regan v. Taxation With*

10

*Representation of Wash.*, 461 U.S. 540, 547 (1983) ("freedom of speech" a fundamental right for equal protection analysis).

Defendants assert that the appropriate level of scrutiny is rational basis, but they provide no support for this claim. (Memo. 12.) None of the cases that Defendants assert in its argument relating to Equal Protection involve claims that implicate the fundamental right of free speech. Because the fundamental right of free speech is involved, the appropriate standard of review is strict scrutiny, not rational basis. *Plyler*, 457 U.S. at 217-18.

## B. The Code's discriminatory treatment of independent expenditure committees is not justified by the State's interest in preventing *quid pro quo* corruption.

As indicated above, the only government interests the Supreme Court has recognized as sufficiently important to justify restrictions on campaign contributions are the prevention of *quid pro quo* corruption, the prevention of the appearance of such corruption, and the prevention of circumvention of contribution limits that prevent actual or apparent corruption. *Wis. Right to Life*, 664 F.3d at 153. Thus, for the reasons explained in Section I, above, the prohibition on coordinated expenditures by independent expenditure committees in races where the limits on contributions to candidates have been eliminated is not narrowly tailored or closely drawn to serve a governmental interest in the prevention of *quid pro quo* corruption.

Defendants assert that independent expenditure committees and individuals, corporations, and PACs are not similarly situated. (Memo. 10.) Defendants assert that independent expenditures committees are different than PACs because PACs have limits on how much they can accept and independent expenditure committees do not. (Memo. 10.) But Defendants fail to explain how this difference results in independent expenditure committees posing more of a risk of *quid pro quo* corruption than PACs as it relates to contributions to candidates in a race where the limits on contributions to candidates are lifted. For example, how would the fact that an

11

individual is limited to making contributions to a PAC of no more than $10,000, 10 ILCS 5/9-8.5(d), prevent against *quid pro quo* corruption when, after the contributions limits are removed, that same individual can give an unlimited amount of money to the candidate directly?

Defendants attempt to distinguish independent expenditure committees from individuals, corporations, unions, and PACs because they have the ability to make independent expenditures over a threshold that result in the contribution limits being removed. But individuals can make independent expenditures in an amount that results in the contribution limits being lifted, 10 ILCS 5/9-8.5 (h-10), and the Code permits those individuals to make unlimited contributions once the caps are removed.

Defendants can provide no relevant differences between independent expenditure committees, on the one hand, and individuals, corporations, unions, and PACs, on the other, that justifies restricting the ability of independent expenditure committees from making contributions to and coordinating with candidates when the contribution limits are removed for individuals, corporations, unions, and PACs.

Plaintiffs have adequately alleged an Equal Protection claim and have a likelihood of success on the merits of their Equal Protection claim because the restriction on independent expenditure committees from making contributions to a candidate when the Code allows everyone else to make unlimited contributions is not narrowly tailored or closely drawn to serve the government's interest in preventing *quid pro quo* corruption.

### III. The other preliminary injunction factors favor an injunction.

When a plaintiff seeks to enjoin a restriction on First Amendment rights, courts presume the remaining preliminary injunction factors to be satisfied because "[t]he loss of First Amendment freedoms is presumed to constitute an irreparable injury for which damages are not adequate, and

injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (citing *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004)).

Defendants assert that Plaintiffs' delay in moving for a preliminary injunction "undercuts [their] claims of irreparable harm" and "may be considered as circumstantial evidence that the potential harm to [Plaintiffs] is not irreparable or as great as claimed." (Memo. 18, citing *Fenje v. Feld*, Case Number: 01 C 9684, 2002 U.S. Dist. LEXIS 9492, at *6 (N.D. Ill. May 28, 2002).) But "[t]he loss of First Amendment freedoms . . . unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). And Defendants have presented no case where a court has found that the loss of plaintiff's First Amendment rights was not irreparable because of plaintiff's delay in bringing the case.

Even if Plaintiffs could have brought their claim earlier, there can be no irreparable harm to Defendants "when [they are] prevented from enforcing an unconstitutional statute because 'it is always in the public interest to protect First Amendment liberties.'" *Joelner*, 378 F.3d at 620.

Thus, the other preliminary injunction factors favor granting Plaintiffs' motion.

### Conclusion

The Court should deny Defendants' motion to dismiss and issue a preliminary injunction enjoining Defendants from enforcing Illinois' ban on coordinated expenditures and contributions to candidates by independent expenditure committees in any race where contribution limits have otherwise been eliminated under 10 ILCS 5/9-8.5(h) or (h-5).


Dated: September 17, 2018

13

Respectfully Submitted,

/s/ Jeffrey M. Schwab
Jeffrey M. Schwab (#6290710)
Patrick J. Hughes (#6225212)
James J. McQuaid (#6321108)
LIBERTY JUSTICE CENTER
190 South LaSalle Street, Suite 1500
Chicago, Illinois 60603
Telephone (312) 263-7668
Facsimile (312) 263-7702
jschwab@libertyjusticecenter.org
phughes@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I, Jeffrey M. Schwab, an attorney, certify that on September 17, 2018, I served Plaintiffs'

Combined Response to Defendants' Motion to Dismiss and Reply in Support of Their Motion for

Preliminary Injunction on Defendants' counsel by filing it through the Court's electronic case

filing system.

/s/ Jeffrey M. Schwab